IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MELVIN JOHNSON,

      Defendant.

Cv. No. 08-2216-STA-tmp
Cr. No. 06-20198-JDB

_____

ORDER CORRECTING THE DOCKET
ORDER DENYING MOTION FOR ORDER GRANTING REQUESTED RELIEF
ORDER DENYING MOTION TO STRIKE
ORDER DENYING MOTION FOR A DEFAULT JUDGMENT
ORDER GRANTING MOTION FOR A STATUS REPORT
ORDER GRANTING MOTION FOR CLARIFICATION OF THE RECORD
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

_____

On April 3, 2008, Defendant Melvin Johnson, Bureau of Prisons inmate registration number 21048-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee, filed a pro se motion pursuant to 28 U.S.C. § 2255. (ECF No. 1.)[1] The Court issued an order on November 6, 2008 directing the Government to respond to the motion. (ECF No. 3.) On December 18, 2008, the Court granted the Government's motion for an extension of time, until January 31, 2009, to file its response. (ECF No. 5.) The Government

_____

[1] The case was originally assigned to United States District Judge J. Daniel Breen and was reassigned to this judge on May 21, 2008. (ECF No. 2.)

did not file a timely response and did not request a further extension of time. On February 26, 2009, Defendant filed a motion asking the Court to grant his § 2255 motion because of the Government's default. (ECF No. 6.) On March 2, 2009 and March 5, 2009, the Government filed motions seeking a further extension of time, until March 6, 2009 (ECF Nos. 7 & 9), which the Court granted on March 6, 2009 (ECF No. 10). The Government filed its Answer on March 6, 2009, which was docketed as a response to Defendant's February 26, 2009 motion and which was, inexplicably, titled Amended Response to the Defendant's Motion for Relief Pursuant to 28 U.S.C. § 2255. (ECF No. 12.) The Answer was redocketed, without the attachments, on March 9, 2009. (ECF No. 14.) On April 1, 2009, Defendant filed Petitioner's "Traverse" Response to Government's Response to Motion to Vacate/Correct Sentence Under 28 USC § 2255 (ECF No. 15), which was incorrectly docketed as a reply in further support of the motion filed on February 26, 2009. The Clerk is directed to correct the docket to reflect that the document Defendant filed on April 1, 2009 is a reply to the Government's Answer.

Defendant's February 26, 2009 motion to grant relief (ECF No. 6) seeks entry of default and a default judgment. On December 14, 2010, Johnson filed Plaintiff's [sic] Motion to Strike and Motion for Default Judgment Pursuant to the Fed.R.Civ.P. 12(f) & Rule 55(b)(2), which seeks to strike the Government's Answer and to

enter judgment by default. (ECF No. 17.) The Court implicitly denied the February 26, 2009 motion when it granted the Government's late-filed motion for an extension of time on March 6, 2009. Moreover, because Fed. R. Civ. P. 55(a) "has no application in habeas corpus cases," district judges cannot enter default judgments in habeas cases without consideration of the merits of a prisoner's claims. Allen v. Perini, 424 F.2d 134, 138 (6th Cir. 1970). Defendant's motions to grant the requested relief, to strike, and for a default judgment, are DENIED.

On April 14, 2011, Defendant filed a motion seeking a status report. On June 16, 2011, Defendant filed a Motion for Clarification of the Record (ECF No. 20) that inquires about the status of the case. For good cause shown, those motions are GRANTED. The status of the case is set forth herein.

On May 23, 2006, a federal grand jury returned a single-count indictment charging Johnson, a convicted felon, with possession of ammunition in or affecting interstate commerce on or about February 8, 2006, in violation of 18 U.S.C. § 922(g). (Indictment, United States v. Johnson, No. 06-20198-JDB (W.D. Tenn.), ECF No. 1.) The factual basis for this charge is set forth in the presentence report:

> 5.    The following information was gathered from a review of materials contained within the files of the United States Attorney, including offense reports prepared by the [Memphis Police Department ("MPD")].

6.   On February 8, 2006, MPD officers responded to the call of a prowler at 3273 Walnut Grove, a duplex. The prowler call was made by Marcus Overton, a resident of one side of the duplex. Overton advised the officers that he arrived home and observed Melvin Johnson coming out of the adjacent duplex, which belonged to his (Overton's) cousin, Torey Henry. When the officers arrived, they observed the defendant standing near the side of the duplex. The defendant was detained and searched for weapons, and he was found in possession of 18 rounds of .380 caliber ammunition and three cell phones. Henry arrived on the scene and identified the defendant as his uncle. Henry also confirmed that the cellular telephones belonged to him.

7.   Subsequent to arrest, and while in custody, the defendant wrote a letter to his sister regarding her grandson, Marcus Overton, the person who had first telephoned the police to report the defendant as a prowler. The letter reads in part, "I am facing the rest of my life in prison. Thanks to your grandson Marcus (Overton). Well, I need for you to brace yourself. Talk to Elaine so the both of you can talk to Mark. That's if he wants to keep his private life private. I don't want you or Elaine to hate me for what's going to happen if he comes to court. Federal court is not a place where you can try and hide anything. I did not want this to go this far. But Mark brought this upon his self. My Lawyer and investigators has his Drivers License # number . . . , D.O.B. . . . and Social Security # . . . and they are digging up everything they can to stop him from coming to court, they are going to bring up the reason he left the Military and why he has moved from job to job, from police dept. to police dept. I know how you feel about your grandson, but this is my life he's playing with. And these people are trying to give me the remainder of my life in prison for something he planted for me to pickup off of that car when I got over there to buy it. Those cell phones and bullets where [sic] on top of that car when I got over there. My trial starts the second week in June. I know this is going to cause ill feeling between you, Elaine and Me. I am truly sorry."

**Victim Impact**

8.   The defendant burglarized victim Torey Henry's home   and   attempted   to   leave   with   three   cellular

4

> telephones. The property temporarily taken from Mr.
> Henry's home was returned to him.

(Presentence Report, ¶¶ 5-8.)

Johnson filed a motion to suppress on May 14, 2007 (Mot. to Suppress with Incorporated Mem. of Law, id., ECF No. 26), and the Government filed a response on June 4, 2007 (Response of the United States to Def.'s Mot. to Suppress, id., ECF No. 32). On June 26, 2007, defense counsel filed a motion to withdraw the suppression motion and to set a date for a change of plea. (Mot. to Withdraw Mot. to Suppress and to Set Change of Plea Date, id., ECF No. 40.) United States District Judge J. Daniel Breen issued an order granting Defendant's motion on June 26, 2007. (Order Granting Def.'s Mot. to Withdraw Mot. to Suppress and to Set a Change of Plea Date, id., ECF No. 41.)

On July 12, 2007, pursuant to a written plea agreement (Plea Agreement, id., ECF No. 43), Johnson appeared before Judge Breen to enter a guilty plea to the sole count of the indictment. The Plea Agreement, which was made pursuant to Fed. R. Crim. P. 11(c)(1)(C), provided, in pertinent part, as follows:

> The United States and MELVIN JOHNSON agree that a
> sentence of 180 months imprisonment is an appropriate and
> reasonable sentence in this case, in light of MELVIN
> JOHNSON's withdrawal of his motion to suppress and his
> waiver of his right to appeal. In addition, it is the
> position of the United States that an enhancement for
> obstruction of justice is not appropriate in this case
> based on the facts currently known to the United States
> absent additional investigation. In addition, in light of
> the defendant's guilty plea, the United States will not
> pursue additional investigation of these potential

5

charges, or enhancements, based on obstruction of justice
related to the instant case based on actions occurring
prior to July 11, 2007.

Given the facts in possession of the United States
at the time of the writing of this agreement, the United
States does not oppose to [sic] the defendant receiving
the full three points for acceptance of responsibility
pursuant to U.S.S.G. Section 3E1.1. The defendant
understands that if the United States receives
information between the signing of this agreement and the
time of sentencing that the defendant has previously
engaged in, or if he engages in the future, in conduct
inconsistent with the acceptance of responsibility,
including, but not limited to, participation of [sic] any
additional criminal activities between now and the time
of sentencing, this position could change. Further, the
defendant understands that whether or not acceptance of
responsibility credit pursuant to Section 3E1.1 is
granted is a matter to be determined by the district
court. Failure of the district court to grant acceptance
of responsibility credit is not a basis for MELVIN
JOHNSON to withdraw his guilty plea.

Defendant understands that Title 18, United States
Code Section 3742 gives him the right to appeal the
sentence imposed by the Court. Acknowledging this,
defendant knowingly and voluntarily waives his right to
appeal any sentence imposed by the Court and the manner
in which the sentence is determined so long as the
sentence [sic] 180 months. This waiver is made in
exchange for the concessions made by the United States in
this Plea Agreement. The waiver in this paragraph does
not apply to claims relating to prosecutorial misconduct
and ineffective assistance of counsel.

. . . .

MELVIN JOHNSON agrees that this plea agreement
constitutes the entire agreement between himself and the
United States and that no threats have been made to
induce him to plead guilty. By signing this document,
MELVIN JOHNSON acknowledges that he has read this
agreement, has discussed it with his attorney and
understands it.

If the Court determines that MELVIN JOHNSON is not
an ARMED CAREER CRIMINAL, then the parties agree that a

sentence no higher than the low end of the applicable guideline range is the appropriate and reasonable sentence in this case.

(Id. at 2-4.) Judge Breen issued an order on July 12, 2007 accepting Defendant's guilty plea. (Order on Change of Plea and Setting, id., ECF No. 44.)

Judge Breen conducted a sentencing hearing on October 17, 2007, at which Johnson was sentenced as an armed career criminal to a term of imprisonment of one hundred eighty (180) months, to be followed by a three-year period of supervised release. (Min. Entry, id., ECF No. 47.)[2] Johnson did not take a direct appeal.

In this § 2255 motion, Johnson raises the following issues:

---

[2] Pursuant to § 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of ammunition is 24 if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. The Court rejected the recommendation in the presentence report that Johnson be afforded a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice because of a letter he had written to a potential Government witness. The Court also rejected the recommendation that Johnson receive a four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(5), because he possessed the ammunition in connection with another felony offense, in this case, aggravated burglary. Johnson received a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 21. Given his criminal history category of VI, the guideline sentencing range was 77-96 months.

However, because of prior convictions for attempted aggravated assault, aggravated assault, burglary (of a residence), and burglary of a building, Johnson was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and U.S.S.G. § 4B1.4. As a result, pursuant to U.S.S.G. § 4B1.4(b)(3)(B), the base offense level was 33. Johnson received a three-point reduction for acceptance of responsibility, giving him a total offense level of 30. Given his criminal history of VI, the guidelines provided a sentencing range of 168-210 months. Johnson was also subject to a mandatory minimum sentence of 15 years, or 180 months, pursuant to 18 U.S.C. § 924(e)(1).

1.    Whether his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure;

2.    Whether his attorney rendered ineffective assistance, in violation of the Sixth Amendment; and

3.    Whether he was denied the right to take a direct appeal.

(ECF No. 1 at 4.)

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. See Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590, 91 L. Ed. 1982 (1947). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10, 96 S. Ct.

8

3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

Id.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). Defendant has the burden of proving that he is entitled to

relief by a preponderance of the evidence. <u>Pough v. United States</u>, 442 F.3d 959, 964 (6th Cir. 2006).

In his second issue,[3] Johnson asserts that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment. (ECF No. 1 at 4.) The factual basis for that issue is the following:

> I was told by Mr. Lee Gerald that he was filing a motion to suppress[,] and after the motion went forward he tell's [sic] me that I should back out of the motion without any reason or explanation. The only reason given is I would be enhanced, if I had the hearing.

(<u>Id.</u>)

In its response, the Government has filed the affidavit of Johnson's defense attorney, Lee Gerald, who states, in pertinent part, as follows:

> 4.   That in connection with and as a part of said practice I was appointed, pursuant to the Criminal Justice Act, to and did represent Melvin Johnson in certain criminal proceedings in the United States District Court for the Western District of Tennessee. Specifically, I defended Mr. Johnson in a prosecution in which he was charged in a one count indictment with the illegal possession of ammunition.
>
> 5.   That I met with Mr. Johnson personally approximately thirteen (13) times during the course of this proceeding. Many of these meetings were in the state court room, where Mr. Johnson was charged with Burglary arising out of the same facts before the District Court on the above numbered indictment.
>
> 6.   That I requested and the District Court approved the appointment of an investigator to locate and

---

[3]   In the interest of clarity, the Court will address the second issue before the first issue.

interview certain witnesses, to cull records from multiple sources and to issue multiple subpoenas.

6.   That I, along with the investigator, spoke with and interviewed multiple witnesses in attempts to bolster Mr. Johnson's version of the events which led to his arrest.[4]

7.   That multiple conversations were had with Mr. Johnson in which he was informed that no witnesses were willing to assist him or to provide helpful testimony if subpoenaed.

8.   That Mr. Johnson communicated via the United States Mail with potential government witnesses in what could be construed as an attempt to discourage said witnesses from appearing in the United States District Court when subpoenaed by the United States.

9.   That a Motion to Suppress Evidence was filed on behalf of Mr. Johnson in the United States District Court.

10.  That the Assistant United States Attorney in this matter agreed to not pursue a sentencing enhancement under Obstruction of Justice and to recommend to the Court that Mr. Johnson be sentenced at the lowest possible statutory sentence if Mr. Johnson withdrew his Motion to Suppress and entered a change of plea.

11.  That I met with Mr. Johnson and discussed orally and with the assistance of a diagram the range of sentencing possibilities if he chose to go forward on the Motion to Suppress and was unsuccessful.

12.  That Mr. Johnson, after being advised of his rights and fully informed of the terms of the plea agreement did knowingly, intelligently and without duress, withdraw his Motion to Suppress and change his plea to guilty on the above numbered indictment.

13.  That I met with [the] Assistant Tennessee Attorney General assigned to Mr. Johnson's state charge of burglary and as a result of multiple meetings with

---

4    The affidavit submitted by defense counsel contains two paragraphs numbered "6."

> said prosecutor, the State of Tennessee agreed to dismiss
> all state charges against Mr. Johnson.

(Aff. of Lee Gerald, sworn to on Mar. 5, 2009, ECF No. 11-2.)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S. Ct. 2052." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[5] "A reasonable

---

[5]   "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Strickland, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S. Ct. 2052." Richter, 131 S. Ct. at 787-88; see also id. at 791-92 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, ___ U.S. ___, 130 S. Ct. 383, 391-92, 175 L. Ed. 2d 328 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S. Ct. 1473, 1385, 176 L. Ed. 2d 284 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

14

Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S. Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S. Ct. 2052.

Richter, ___ U.S. at ___, 131 S. Ct. at 788.

The two-part test stated in Strickland applies to challenges to guilty pleas based on the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. at 56, 106 S. Ct. at 369 (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S. Ct. at 370; see also Padilla, 559 U.S. at ___, 130 S. Ct. at 1485 ("[T]o obtain relief on this type of claim, a [prisoner]

15

must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").[6]

In his motion, Johnson asserts that his attorney withdrew the suppression motion "without any reason or explanation" apart from the assertion that "I would be enhanced, if I had the hearing." (ECF No. 1 at 4.) In his reply to the Government's Answer, Johnson stated that his "plea agreement was entered unknowingly, unintelligently, and thus involuntarily." (ECF No. 15 at 1.) These assertions are not supported by the transcript of the change of plea hearing.

At the plea hearing, Johnson stated that he had read the indictment and discussed it with his attorney (07/12/07 Tr. at 7) and that he understood what he was being charged with (id. at 7-8). He also understood the penalties that could be imposed. (Id. at 8-9.) Johnson testified under oath that he understood the purpose of

---

[6]    The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Hill, 474 U.S. at 59, 106 S. Ct. at 370-71.

the hearing, he had had a sufficient opportunity to review the plea agreement and discuss it with his attorney, and he was satisfied by the advice and representation provided by his attorney. (<u>Id.</u> at 5.) Johnson acknowledged that he understood all the rights he was waiving by pleading guilty. (<u>Id.</u> at 5-7.) He testified that nobody had threatened him or tried to force him to plead guilty. (<u>Id.</u> at 9.) He identified his signature on the plea agreement (<u>id.</u> at 9-10), and he affirmed that he entered into the agreement freely and voluntarily (<u>id.</u> at 10). The terms of the plea agreement were described (<u>id.</u> at 10-13), and Johnson stated that that description was consistent with his understanding of the agreement (<u>id.</u> at 13). Johnson acknowledged that he understood that he was waiving the right to appeal his conviction and sentence "except for certain exceptions." (<u>Id.</u> at 15.) He also agreed with the Government's statement of the facts it would be prepared to prove at trial. (<u>Id.</u> at 16.)

Johnson's conclusory allegations are insufficient to warrant an evidentiary hearing. Johnson's testimony at the change of plea hearing is entitled to a heavy presumption of truthfulness. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Had Johnson chosen to reject the plea agreement and pursue his suppression hearing, he might have been subject to a

longer sentence.[7] Even if he chose to plead guilty at a later date, he might have faced an enhancement for obstruction of justice and the loss of the reduction for acceptance of responsibility. He also faced the risk that he could have received a sentence higher than the statutory minimum sentence for an armed career criminal that was imposed.

The second issue is without merit and is DISMISSED.

In his first issue, Johnson asserts that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. The factual basis for this issue consists of the assertion that, "[a]t the time of my arrest which was the date of February 8-2006 [sic], a Memphis Police Officer arrested me for the crime of burglary[,] which were later dismissed." (ECF No. 1 at 4; see also ECF No. 15 at 1.)[8]

---

[7]    As will be discussed infra, the suppression motion lacked merit.

[8]    The Supreme Court's decision in Stone v. Powell, 428 U.S. 465, 489-95, 96 S. Ct. 3037, 3050-53, 49 L. Ed. 2d 1067 (1976), makes clear that Fourth Amendment issues ordinarily may not be raised on collateral review where, as here, the defendant had a full and fair opportunity to litigate the suppression issue prior to trial and on direct appeal. See also United States v. Johnson, 457 U.S. 537, 562 n.20, 102 S. Ct. 2579, 2594 n.20, 73 L. Ed. 2d 202 (1982) ("After Stone v. Powell, 428 U.S. 465 (1976), the only cases raising Fourth Amendment challenges on collateral attack are those federal habeas corpus cases in which the State has failed to provide a state prisoner with an opportunity for full and fair litigation of his claim, analogous federal cases under 28 U.S.C. § 2255, and collateral challenges by state prisoners to their state convictions under postconviction relief statutes that continue to recognize Fourth Amendment claims."); Boone v. United States, No. 96-1398, 1996 WL 627760, at *2 (6th Cir. Oct. 29, 1996); Richardson v. United States, No. 93-6193, 1994 WL 194197, at *2 (6th Cir. May 16, 1994); Kapsalis v. United States, 345 F.2d 392, 394 (7th Cir. 1965). Stone's restriction on federal habeas review of Fourth Amendment claims does not apply to ineffective assistance of counsel claims that are founded primarily on ineffective representation with respect to a Fourth Amendment issue. Kimmelman v. Morrison, 477 U.S. 365, 382-83, 106 S. Ct. 2574, 2587, 91 L. Ed. 2d 305 (1986). Because Defendant argues, in effect, that defense counsel rendered
(continued...)

In <u>McCann v. Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970), the Supreme Court held that habeas relief was not available to a prisoner seeking to challenge his guilty plea on the basis that his confession had been coerced.[9] Subsequently, in <u>Tollett v. Henderson</u>, 411 U.S. 258, 266-67, 93 S. Ct. 1602, 1607-08, 36 L. Ed. 2d 235 (1971), the Supreme Court extended the reasoning of cases such as <u>McCann</u> to hold that a defendant who has entered a guilty plea on the advice of counsel may

---

[8]      (...continued)
ineffective assistance by recommending that he withdraw his suppression motion, the Court will address the first issue on the merits.

[9]      The Supreme Court explained why it is illogical for a criminal defendant to plead guilty when the allegedly coerced confession is the primary evidence against him:

> Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him. For the defendant who considers his confession involuntary and hence unusable against him at a trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he may be. . . . If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case. Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced-confession claim in collateral proceedings. Surely later allegations that the confession rendered his plea involuntary would appear incredible . . . .
>
> A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact.

<u>Id.</u> at 768-69, 90 S. Ct. at 1447-48. This analysis is equally applicable to Defendant's decision to plead guilty despite his belief that the bullets were seized in violation of the Fourth Amendment.

19

not obtain collateral relief on proof that the indicting grand jury
was unconstitutionally selected in the absence of ineffective
assistance of counsel. As the Supreme Court explained, these cases
rest on the same general principal:

> [A] guilty plea represents a break in the chain of events
> which has preceded it in the criminal process. When a
> criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is
> charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may
> only attack the voluntary and intelligent character of the
> guilty plea by showing that the advice he received from
> counsel was not within the standards set forth in McCann.

Id. at 267, 93 S. Ct. at 1608.[10] The written Plea Agreement in this
case does not reserve the right to appeal any issue with respect to
guilt, as required by Fed. R. Crim. P. 11(a)(2). Indeed, the Plea
Agreement makes clear that Johnson withdrew the suppression motion
and waived his right to appeal as part of the consideration for the
guilty plea. Johnson has, therefore, waived any suppression issue by
his unconditional guilty plea. United States v. Herrera, 265 F.3d
349, 351-52 (6th Cir. 2001) (applying Fed. R. Crim. P. 11(a)(2));
United States v. Pickett, 941 F.2d 411, 415-17 (6th Cir. 1991)
(same).

---

[10]    Technically, the issue is not "waived" as a matter of constitutional
law. Menna v. New York, 423 U.S. 61, 62 n.2, 96 S. Ct. 241, 242 n.2, 46 L. Ed.
2d 195 (1975) (defendant, by pleading guilty, did not waive a claim that the
indictment should have been dismissed under the double jeopardy clause of the
Fifth Amendment); see also Haring v. Prosise, 462 U.S. 306, 319-22, 103 S. Ct.
2368, 2376-77, 76 L. Ed. 2d 595 (1983) (a defendant's guilty plea does not waive
a subsequent suit under 42 U.S.C. § 1983 for an alleged Fourth Amendment
violation).

Even if that were not the case, the suppression motion is without merit. Marcus Overton called the police and reported that he saw Johnson coming out of the duplex next door. When the officers arrived, they observed Johnson standing near the side of the duplex. At a minimum, the police were entitled to question Johnson and to search his person to ensure their safety while doing so.[11] After questioning Johnson, the police had probable cause to arrest him for the offense of aggravated burglary.[12]

This conclusion is not altered by the fact that the state-court burglary charge was subsequently dismissed. A Fourth Amendment claim for false arrest requires an arrest without probable cause. See, e.g., Parsons v. City of Pontiac, 533 F.3d 492, 500 (6th Cir. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2432, 174 L. Ed. 2d 227 (2009); Crockett v. Cumberland Coll., 316 F.3d 571, 580 (6th Cir. 2003) ("Today it is well established that an arrest without probable cause violates the Fourth Amendment."). Probable cause

---

[11]    Pursuant to Terry v. Ohio, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889 (1968), a police officer is permitted to make a brief investigatory stop when he has a reasonable suspicion that criminal activity may be afoot and to pat down a subject to ensure that he is not armed. An officer's reasonable suspicion must be supported by "specific and articulable facts." Id. at 21, 88 S. Ct. at 1880; see also Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000) ("The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity.") (quoting Terry, 392 U.S. at 27, 88 S. Ct. at 1883). In this case, the police were responding to the complaint of a named individual who identified Johnson as the person who had allegedly broken into the duplex next door to him.

[12]    Under Tennessee law, burglary is the entry into a building without the consent of the property owner with intent to commit a theft. Tenn. Code Ann. § 39-14-402(a). Aggravated burglary is burglary of a habitation. Id., § 39-14-403.

exists where "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Crockett, 316 F.3d at 580 (quoting Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979)); see also Wolfe v. Perry, 412 F.3d 707, 717 (6th Cir. 2005) ("probable cause necessary to justify an arrest is defined as 'whether at that moment [of the arrest] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense'") (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142 (1964)) (alterations in original); Gardenhire v. Schubert, 205 F.3d 303, 315 (6th Cir. 2000). The fact that an arrest does not result in a conviction does not necessarily mean that the arrest itself was unlawful. Because the relevant inquiry concerns the information available to the officer at the time of the arrest, "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988); see also Baker, 443 U.S. at 145, 99 S. Ct. at 2695 ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every

22

suspect released."). Where, as here, there was probable cause to arrest Johnson for burglary, the subsequent decision to drop the state-court charges does not require that the evidence obtained during the search of his person be suppressed. <u>DeFillippo</u>, 443 U.S. at 39-40, 99 S. Ct. at 2633.

The first issue is without merit and is DISMISSED.

In his third issue, Johnson contends that he was denied the right to take a direct appeal. (ECF No. 1 at 4.) Notably, he does not contend that he asked his attorney to file a notice of appeal and his attorney failed to do so.[13] Instead, he states that "[t]he prosecutor wrote it up in the plea agreement that I would not have an appeal against my sentence in this case." (<u>Id.</u>)

The Plea Agreement in this case contained an appeal waiver provision. <u>See</u> <u>supra</u> p. 6. This waiver is binding if it is made knowingly and voluntarily. <u>Watson v. United States</u>, 165 F.3d 486, 489 (6th Cir. 1999). Judge Breen found that the appeal waiver in this case was intelligent and voluntary. (07/12/2007 Tr. at 10, 15; 10/17/2007 Tr. at 36-37.) The third issue is without merit and is DISMISSED.

---

[13]    Defendant is not raising a claim under <u>Rodriguez v. United States</u>, 395 U.S. 327, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969). Such a claim requires a defendant to request his attorney to file a notice of appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000); <u>Regalado v. United States</u>, 344 F.3d 520, 525-26 & n.3 (6th Cir. 2003); <u>Ludwig v. United States</u>, 162 F.3d 456, 459 (6th Cir. 1998).

Defendant's conviction and sentence are valid and, therefore, his motion is DENIED. Judgment shall be entered for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000)); Henley v. Bell, 308 F. App'x 989 (6th Cir. 2009) (same), cert. denied, ___ U.S. ___, 129 S. Ct. 1057, 173 L. Ed. 2d 482 (2009). A COA does not require a showing that the appeal will succeed. Miller, 537 U.S. at 337; 123 S. Ct. at 1039; Caldwell v. Lewis, Nos. 08-5156

24

& 08-5157, 2011 WL 915764, *5 (6th Cir. Mar. 16, 2011) (same).
Courts should not issue a COA as a matter of course. Bradley v.
Birkett, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting Slack, 537
U.S. at 337, 123 S. Ct. at 1039).

In this case, there can be no question that the issues
raised in this § 2255 motion are without merit for the reasons
previously stated. Because any appeal by Defendant on the issues
raised in this motion does not deserve attention, the Court DENIES
a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation
Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to
appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117
F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis
in a § 2255 case, and thereby avoid the appellate filing fee
required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain
pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d
at 952. Rule 24(a) provides that a party seeking pauper status on
appeal must first file a motion in the district court, along with a
supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a)
also provides that if the district court certifies that an appeal
would not be taken in good faith, or otherwise denies leave to
appeal in forma pauperis, the prisoner must file his motion to
proceed in forma pauperis in the appellate court. See Fed. R. App.
P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is DENIED.[14]

IT IS SO ORDERED this 11th day of July, 2011.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[14] If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.